# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1854
Filed July 8, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Nickie Ray Williams,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Linn County,
The Honorable Christopher L. Bruns, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy (argued),
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued),
Assistant Attorney General, attorneys for appellee.

———————————

Heard at oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

Nickie Ray Williams appeals his convictions after a jury found him guilty of attempted murder, willful injury causing serious injury, domestic abuse assault by use or display of a dangerous weapon, and use of a dangerous weapon in the commission of a crime for slicing his then-girlfriend's neck and stabbing her twice in the back with a kitchen knife. *See* Iowa Code §§ 707.11, 708.4(1), 708.2A(2)(c), 724.4 (2022). The victim initially cooperated with the prosecution, was deposed by Williams, and agreed to accept service of a subpoena to testify at trial by email. But a couple weeks before trial, she disappeared. And despite many efforts by the State to locate her, she did not testify at trial. Instead, the district court admitted parts of her deposition testimony over Williams's hearsay and Confrontation Clause objections. The court also denied Williams's motion for continuance of the trial so that he could try to locate the victim. Williams now challenges both rulings.

Neither challenge succeeds. The district court did not abuse its discretion in denying a trial continuance when there was little prospect the victim would be located and Williams offered no plan for how he would do so with more time. As for the admissibility of the victim's deposition testimony, the State's extensive efforts to locate the victim without success show that the victim was unavailable. And Williams had the opportunity to cross-examine the victim when he deposed her under Iowa Rule of Criminal Procedure 2.13. So the court properly admitted the victim's deposition testimony under Iowa Rule of Evidence 5.804(b)(1) and did not violate his right to confront the victim. We thus affirm Williams's convictions.

## I. Background Facts and Proceedings

Williams and the victim were friends for over twenty years and began a romantic relationship around 2019. One morning late in July 2022, they

2

began drinking alcohol together in their shared home. A few hours later the victim's cousin arrived at the house and began drinking with them. Soon after, the victim and her cousin left to go to a friend's place to pick up clothes while Williams stayed behind. They returned about an hour later, but Williams was upset with how long it had taken them and he and the victim began arguing. The cousin had grown tired and was drunk, so he went outside to a parked SUV and reclined in the passenger seat to sleep.

The argument between Williams and the victim escalated quickly to the point that the victim said she wanted to end their relationship and tried to leave the home. As she tried to walk out the front door, Williams grabbed her from behind and slit her neck with a kitchen knife. He then held her up vertically and stabbed her twice in the back before letting her fall to the ground in the doorway. Williams fled the scene and called 911 as he did so:

Operator: 911, What's the address of your emergency?

Williams: 911. My address is 3007. I—I stabbed somebody.

Operator: Okay, I didn't understand what you said.

Williams: And I think she might be dying.

Operator: Okay, tell me the address. I can't understand you.

Williams: It's 3007 Oakland Road.

Operator: 3007 Oakland Road?

Williams: She might be dying. She might be dead. Yes.

Operator: Is it a house or an apartment?

Williams: A house.

Operator: So you're saying you stabbed who?

Williams: Yeah. I stabbed [the victim].

Operator: Your Girlfriend?

Williams: She came to my house and and talking about she was going to hurt me.

. . . .

Operator: Do you think she's not alive?

Williams: I don't think so.

Operator: You think she's dead?

Williams: Yes, I think so.

Williams then identified himself to the operator as "Nickie Williams," and once more said, "I just killed her" before going silent while the line remained open for a few more minutes. The phone was later recovered on train tracks near the home.

Bodycam video of a responding officer showed a body lying flat in the doorway as officers approached the home. Officers immediately tended to the victim's wounds. As they did so, they asked the victim if she had other injuries besides the obvious wound on her neck. The victim responded that she was also stabbed in the back. And when asked "by who" she responded, "Nickie Ray." Later in the video, the victim said, "He killed me." When asked "Who killed you?" she responded "Nickie Ray." Williams was found by police around that same time in a nearby hotel parking lot.

The next day, the State charged Williams with attempted murder, willful injury resulting in serious injury, domestic abuse assault with a dangerous weapon, and use of a dangerous weapon in the commission of a crime. And after multiple continuances over two years, a jury trial was eventually scheduled to start at the end of July 2024.

Four days before the first day of trial, the State notified the district court and Williams that it anticipated the victim "may fail to appear for trial" because she had stopped responding and the State had been unsuccessfully trying to locate her over the past week. The State thus asked the court to make a preliminary ruling that the victim's deposition testimony would be admissible.[1] Williams filed a written resistance the next day. And the court held a hearing on the motion the day before trial.

At the hearing, the court received evidence about the State's efforts to locate the victim—mainly through the prosecutor's professional statements—and heard argument. Williams argued that admitting the deposition testimony would violate his confrontation rights because the State did not use "good faith efforts" to locate the victim and the deposition did not adequately confront the victim because it was "not a deposition to preserve evidence" but was "simply to ask questions" as "a fishing expedition" rather than "cross-examin[ing] her about her inconsistent statements."

The district court rejected Williams's argument, ruling that the deposition testimony would be admissible subject to any other objections to specific testimony that would be inadmissible for other reasons. The court reasoned "that reasonable efforts were made to obtain the presence of the witness at trial" so the victim was "not available for purposes of this trial" and that under governing precedent, "deposition testimony is admissible if the defendant was taking the deposition."

---

[1] The State also sought a ruling that the bodycam video of the victim's statements to police officers was admissible. The court tentatively ruled that it was because the statements were nontestimonial, and the video was admitted at trial. But Williams does not challenge that decision on appeal, so we focus on the deposition testimony.

Williams then moved for a trial continuance, arguing that he had "the right to request to try to find her himself so he can get her on the stand." The court denied the motion "at this time, absent a showing that [Williams] has some way to find the witness." Williams did not offer any such plan for finding the witness, and the jury trial went forward the next day. The jury ultimately found Williams guilty as charged. And Williams now appeals.

## II.    Denial of Motion for Continuance

Williams first challenges the denial of his motion for continuance after he learned—four days before the trial was scheduled to start—that the victim had disappeared and the State wanted to introduce the victim's deposition testimony in her absence. He argues that the district court abused its discretion in denying his request mainly because "a continuance was necessary to give him any reasonable opportunity to make an attempt to locate [the victim] for trial confrontation."[2] The parties agree that we review this ruling for an abuse of discretion. *See State v. Artzer*, 609 N.W.2d 526, 529 (Iowa 2000).

The State and Williams both have interests "in a speedy and fair trial." *Id.* at 530; *see also* Iowa R. Crim. P. 2.33(2) ("It is the public policy of the State of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties."). Recognizing these interests, our supreme court has placed "[t]he decision to grant or deny a motion for continuance . . . in the sound discretion of the trial judge." *Artzer*, 609 N.W.2d at 530. "We call upon our trial judges to do justice to those

---

[2] For the first time on appeal, Williams also briefly seems to suggest that a continuance was warranted to give him a chance to adjust his trial strategy. But to the extent that Williams intends to assert this as a separate ground for a continuance, it is not preserved for our review because it was not urged to or considered by the district court.

needing and deserving a continuance, while at the same time resolutely moving the trial assignment toward the speedy resolution of cases." *State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992). And because the district court has a "closer vantage point" and "can better sort through these matters than an appellate court can," *id.*, the court's decision "will not be disturbed on appeal unless an injustice has resulted." *Artzer*, 609 N.W.2d at 530.

Applying this law, the supreme court held that a district court did not abuse its discretion in denying a midtrial motion for continuance by joint defendants when an alibi witness unexpectedly "failed to appear despite a subpoena directing him to do so." *Teeters*, 487 N.W.2d at 348. The court reasoned that those circumstances were "especially appropriate for allowing trial court discretion," noting that "[n]o attempt was made to estimate how long it would take to find [the witness]" and the witness's "address and whereabouts, notwithstanding efforts to locate him, were at that time unknown." *Id.* The court thus saw "no basis to interfere here with the trial court's exercise of its broad discretion." *Id.*

Similarly here, Williams requested a trial continuance the day before trial was scheduled to start after the court ruled that the victim's deposition testimony would be admissible. The court denied his request "at this time, absent a showing that [Williams] has some way to find the witness." The court further explained to Williams:

> If you can show me before we start the trial that you have some way to find this witness, then I might reconsider that, but I don't believe the State has a way to find the witness and I believe the State has tried hard to find the witness, who, whether with intent or not, caused the State to believe she was going to appear and then for other reasons appears not to be appearing.

And indeed the court had just found, in ruling on the evidentiary issue, that the State had made "reasonable efforts . . . to obtain the presence of the

witness at trial" and that there was little anyone else could do since she already had two outstanding warrants and "[n]o one has found her."

We see no abuse of discretion in this reasoning. Under the circumstances, there was little prospect that granting a continuance would result in Williams locating the victim so that she could testify at trial.[3] Even so, the court still expressed receptivity to reconsidering if Williams offered any specific plan for how he would find the witness. But he did not do so. And proceeding with the trial did not result in an injustice. There is thus no basis to disturb the court's exercise of judgment in denying Williams's motion.

## III.  Admission of the Victim's Deposition Testimony

Williams also challenges the district court's admission of the victim's deposition testimony over his hearsay and Confrontation Clause objections. We review a district court's ruling on a hearsay objection for correction of errors at law. *State v. Sievers*, 20 N.W.3d 203, 208 (Iowa 2025). And our review of a ruling on a Confrontation Clause objection is de novo. *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021).

Absent a constitutional, statutory, or court-rule exception, hearsay is inadmissible. *See* Iowa R. Evid. 5.802. But under Iowa Rule of Evidence 5.804(b)(1), a declarant's prior deposition testimony is not excluded by the hearsay rule "if the declarant is unavailable as a witness" and the party against whom it is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." *Cf. State v. Murray*,

_____

[3] It matters not, as Williams asserts, that the victim was later discovered to be present in the city where this case was tried and answered her phone when the prosecutor called to inform her of the verdict. *See State v. McNeal*, 897 N.W.2d 697, 707 n.2 (Iowa 2017) ("In reviewing a district court ruling for abuse of discretion, it makes sense to consider the facts and circumstances as they existed when the district court ruled.").

512 N.W.2d 547, 551 (Iowa 1994) (noting that "testimony from a prior trial may be read to the jury in a later proceeding" under the same circumstances).

Similarly, the constitutional guarantee that a criminal defendant has "the right . . . to be confronted with the witnesses against him," U.S. Const. amend. VI, means that "[a] testimonial out-of-court statement made by a declarant who is unavailable to testify is inadmissible if the defendant has not had an opportunity to cross-examine the declarant." *State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007); *see also State v. Wright*, 378 N.W.2d 727, 730–31 (Iowa Ct. App. 1985) (holding that the Confrontation Clause is satisfied even when "the witness is not present for the trial" if "(1) the witness is unavailable; and (2) defendant cross-examined the witness before trial."). When a defendant challenges the admission of hearsay statements as violating his confrontation rights, "the State has the burden of showing that the Confrontation Clause has been satisfied." *State v. Liggins*, 978 N.W.2d 406, 418 (Iowa 2022).[4]

Because a showing of unavailability and an opportunity to cross-examine would satisfy both the hearsay rule and the Confrontation Clause and there is much overlap in the analysis, we analyze the evidentiary and constitutional claims together addressing each requirement in turn.

*Unavailability*. For purposes of the rules of evidence, "[a] declarant is considered to be unavailable as a witness," among other circumstances not relevant here, when the declarant "[i]s absent from the trial or hearing and

---

[4] Williams makes a couple of stray references to the Iowa Constitution's Confrontation Clause, which similarly guarantees criminal defendants "a right . . . to be confronted with the witnesses against him." Iowa Const. art. I, § 10. But Williams makes no distinct argument based on the Iowa Constitution. So to the extent that a state-constitutional claim is properly before us, we do not separately analyze it.

the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance." Iowa. R. Evid. 5.804(a)(5). And under the Confrontation Clause, "a witness is not unavailable . . . 'unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial.'" *State v. Holland*, 389 N.W.2d 375, 379 (Iowa 1986) (quoting *Barber v. Page*, 390 U.S. 719, 724–25 (1968)). A good-faith effort "requires more than the issuance of a subpoena and the return of it not found." *State v. Dean*, 332 N.W.2d 336, 339 (Iowa 1983). And a witness's departure from the state, on its own, is also insufficient to prove unavailability. *State v. Kite*, 513 N.W.2d 720, 721 (Iowa 1994). But when the State makes "a reasonable effort" to locate the witness and "that effort proved unsuccessful," the witness is unavailable. *See Murray*, 512 N.W.2d at 552.

We agree with the district court that the State showed its good-faith and reasonable efforts to obtain the victim's presence at trial. At the pretrial hearing on the admissibility of the deposition testimony, the prosecutor made a professional statement detailing the State's many efforts to find the victim. To start, after having cooperative contact throughout the case, the prosecutor spoke to the victim by phone about a month before trial. And the victim confirmed she would travel to Iowa from Tennessee to testify and accept service of the subpoena by email. The State emailed the subpoena to the victim a few days later at the email address she requested and three other email addresses associated with her.

About two weeks after emailing the subpoena—eleven days before trial—the State became concerned that the victim was not responding to the prosecutor. The prosecutor continued to try to contact her every business day until trial—calling, texting, and emailing at every phone number or email

address known to be associated with her. The State also reached out to two social media accounts associated with her. And the State contacted the local police department where the victim lived in Tennessee asking the police to do a welfare check on the victim. After doing so, the Tennessee police reported that the victim's husband was the only one at the address and that he said he had not seen her for a few months. He also told the police that he thought the victim was hiding from Iowa authorities because of an Iowa arrest warrant. The prosecutor later followed up by phone with the victim's husband and confirmed this information directly and learned that the victim had an active warrant for a probation violation in Tennessee. And the prosecutor confirmed that the victim had an active arrest warrant in another criminal case for failing to appear.

The State did not stop there. It requested the police department in Mason City, Iowa to do a welfare check at an address the victim had listed in an affidavit in a juvenile court case in which she was involved. Unfortunately, the Mason City police reported back that the residents at that address had not seen the victim for about a month. The State also contacted the victim's attorney and the social worker in those juvenile cases. And both said they had not had any recent contact with the victim and did not know her location. So too did the State reach out to the victim's cousin and her domestic-abuse advocate—neither had any idea where she was.

"When a witness leaves town and purposefully avoids detection and the authorities undertake efforts such as this to locate the witness, we conclude that a good faith effort was made and that the witness was 'unavailable.'" *Wright*, 378 N.W.2d at 731. The State's conduct was much more than issuing a subpoena. *See Dean*, 332 N.W.2d at 339. And it fits comfortably within the heartland of cases where courts have found good-faith

efforts. *See, e.g.*, *Murray*, 512 N.W.2d at 551–52 (affirming the State's efforts to locate a witness were reasonable where an investigator attempted to serve a subpoena at two known Iowa addresses, pursued leads from the witness's friends indicating she had moved to Wisconsin, attempted to locate her through her boyfriend, and obtained a material witness warrant that Wisconsin authorities were unable to execute before trial); *Wright*, 378 N.W.2d at 731 (finding good-faith efforts even where no subpoena was issued until four days before trial and over those four days police then made many attempts to locate the witness at his last known address, questioned the witness's attorney and family members, and used informants to try to find him).

Bottom line, the State's efforts were reasonable, good-faith attempts to locate the victim before trial. The victim was unavailable under the rules of evidence and the Confrontation Clause.

*Opportunity to Cross-Examine.* Under the rules of evidence, the State must show that Williams had "an opportunity and similar motive to develop" the victim's testimony "by direct, cross-, or redirect examination." Iowa R. Evid. 5.804(b)(1)(A)–(B). The Confrontation Clause similarly requires that the defendant has "had a prior opportunity to cross-examine" the victim. *Wells*, 738 N.W.2d at 218. But "'[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *State v. Tompkins*, 859 N.W.2d 631, 640 (Iowa 2015) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)). And our appellate courts have repeatedly held that a deposition taken by a criminal defendant in the same criminal case satisfies this requirement for "a meaningful opportunity to examine" a witness unavailable at trial. *State v. Castillo*, 315 N.W.2d 63, 66 (Iowa 1982);

*see also Wright*, 378 N.W.2d at 731; *State v. Clark*, No. 19-1937, 2021 WL 4592251, at \*5 (Iowa Ct. App. Oct. 6, 2021); *State v. West*, No. 15-1431, 2016 WL 5930629, at \*3–4 (Iowa Ct. App. Oct. 12, 2016).

Despite this governing precedent, Williams argues "that a mere discovery deposition, like the one undertaken here, (1) does not provide the constitutionally required prior opportunity to *cross*-examine the witness; and (2) does not provide a similar motive or opportunity in examining the witness as would be present at trial." But we are bound by our supreme court's decision in *Castillo* and our court's published decision in *Wright*. Indeed, in *Wright* and our later unpublished decisions, we have rejected the argument that a defendant's strategic choices in a deposition pose any Confrontation Clause problem to later use of the deposition. *See Wright*, 378 N.W.2d at 730–31 (reasoning that "different motives in cross-examining a witness at a deposition as opposed to such questioning at trial" were "irrelevant" because "[t]he issue is whether cross-examination occurred at all and not the degree of cross-examination the witness was subjected to"); *West*, 2016 WL 5930629, at \*4; *Clark*, 2021 WL 4592251, at \*5. And Williams has pointed us to no contrary Iowa authority finding a criminal discovery deposition was not a meaningful opportunity for cross-examination.

We thus agree that Williams had an adequate prior opportunity to cross-examine the victim when taking her deposition. And so, the district court neither erred in admitting portions of the deposition at trial under rule 5.804(b)(1) nor violated the Confrontation Clause.

**AFFIRMED.**